AUSA: Henry L. Ross

| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | **24 MAG 2059** |
| UNITED STATES OF AMERICA<br><br>v.<br><br>JERMAINE GREENE,<br><br>                    Defendant. | **SEALED COMPLAINT**<br><br>Violations of 18 U.S.C. §§ 922(g)(1) and 924(c); and 21 U.S.C. §§ 812 and 841<br><br>COUNTY OF OFFENSE:<br>BRONX |

SOUTHERN DISTRICT OF NEW YORK, ss.:

JAMA JOSEPH, being duly sworn, deposes and says that he is a Detective with the New York City Police Department ("NYPD"), and charges as follows:

### COUNT ONE
### (Possession of Ammunition After a Felony Conviction)

1.  On or about March 28, 2024, in the Southern District of New York and elsewhere, JERMAINE GREENE, the defendant, knowing he had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed ammunition, to wit, twelve 9 mm bullets, and the ammunition was in and affecting commerce.

(Title 18, United States Code, Section 922(g)(1).)

### COUNT TWO
### (Distribution of Narcotics)

2.  On or about March 28, 2024, in the Southern District of New York and elsewhere, JERMAINE GREENE, the defendant, knowingly and intentionally distributed and possessed with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

3.  The controlled substance involved in the offense was a quantity of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(C).

(Title 21, United States Code, Sections 812, 841(a)(1) and 841(b)(1)(C).)

### COUNT THREE
### (Firearms Use, Carrying, and Possession)

4.  On or about March 28, 2024, in the Southern District of New York and elsewhere, JERMAINE GREENE, the defendant, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, namely, the drug trafficking crime

charged in Count Two of this Complaint, knowingly used and carried a firearm, and in furtherance of such crime, possessed a firearm.

The bases for my knowledge and for the foregoing charges are, in part, as follows:

5. I am a Detective assigned to the Firearms Suppression Section of the NYPD and have been involved in the investigation of this matter. I base this affidavit on my conversations with other law enforcement officers; my examination of photographs, reports, and recordings, including body-worn camera footage; and my involvement in this investigation. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

6. Based on my review of NYPD reports and records, including body-worn camera footage, and my discussions with other law enforcement officers, I have learned the following, in substance and in part:

   a. On or about March 28, 2024, NYPD officers were patrolling the New York City subway station located at the intersection of Fordham Road and Jerome Avenue in the Bronx, New York (the "Fordham Road Station").

   b. At approximately 5:37 p.m., two NYPD officers ("Officer-1" and "Officer-2") observed JERMAINE GREENE, the defendant, walking through an emergency exit gate into the Fordham Road Station, without paying a fare, and without permission or authority to enter.

   c. Officer-1, Officer-2, and other NYPD officers (collectively, the "Officers") approached GREENE after he had walked up a flight of stairs to the southbound subway platform of the Fordham Road Station. Officer-1 requested identification, which GREENE provided.

   d. Officer-1 and Officer-2 asked GREENE if he knew why the Officers had stopped him. GREENE nodded in response.

   e. After a query for GREENE's name in a law enforcement database revealed that GREENE was the subject of two open arrest warrants, the Officers placed GREENE under arrest.

   f. The Officers asked GREENE if he had any weapons or anything that could hurt them. In response, GREENE said, in sum and substance: "Yeah." GREENE also said repeatedly, in sum and substance: "I'm dirty."[1]

   g. Officer-2 conducted a search of GREENE incident to arrest, which was captured by body-worn camera, and recovered a privately-assembled 9 mm "ghost" gun (the "Firearm") from GREENE's waistband. The magazine of the Firearm contained twelve 9 mm bullets (the "Ammunition"): six bullets manufactured by Federal, five bullets manufactured by

---

[1] At the time GREENE made these statements, he had not yet been advised of his *Miranda* rights.

2

Winchester, and one bullet manufactured by SIG Sauer. A photograph of the Firearm (right) and Ammunition (left) is below.



   h.  The Officers transported GREENE from the Fordham Road Station to NYPD Transit District 11 in the Bronx, New York. At approximately 6:11 p.m., Officer-2 conducted an inventory search of GREENE, which was captured by body-worn camera, and recovered, among other things: (i) a plastic bag ("Plastic Bag-1") containing what appeared to be cocaine from GREENE's pants pocket; and (ii) a black bookbag ("Bookbag-1") that GREENE was wearing underneath a jacket.

   i.  Inside Bookbag-1, law enforcement officers found, among other things, a plastic bag ("Plastic Bag-2") containing what appeared to be cocaine, a scale (the "Scale"), and

several empty plastic bags. A photograph of the Scale (left), Plastic Bag-1 (bottom right), and Plastic Bag-2 (top right) is below.



7. Based on my review of NYPD records, I have learned that the NYPD Police Laboratory later performed a controlled substance analysis of the substance inside Plastic Bag-1, and determined that the substance was approximately 0.99 grams of cocaine.

8. Based on my review of NYPD records, I have learned that the NYPD Police Laboratory later performed a controlled substance analysis of the substance inside Plastic Bag-2, and determined that the substance was approximately 49.75 grams of cocaine.

9. Based on communications I have had with a Special Agent from the Bureau of Alcohol, Tobacco, Firearms and Explosives who is familiar with the manufacturing of firearms and ammunition, I know that the Ammunition was not manufactured in the State of New York.

10. Based on my review of criminal history records pertaining to JERMAINE GREENE, the defendant, I have learned, among other things, the following:

    a. On or about April 7, 2005, GREENE was convicted in Kent County Superior Court of second degree murder, in violation of Delaware Criminal Code Section 635(2), for which GREENE was sentenced to 25 years' imprisonment; and second degree assault, in violation of Delaware Criminal Code Section 612(a)(2), for which GREENE was sentenced to six years' imprisonment, to run consecutively.

    b. On or about December 1, 1998, GREENE was convicted in Bronx County Superior Court of second degree robbery, in violation of New York Penal Law Section 160.10, for

which GREENE was sentenced to four years' imprisonment.

  WHEREFORE, I respectfully request that a warrant be issued for the arrest of JERMAINE GREENE, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

        ___s/ Jama Joseph /otw_____
        JAMA JOSEPH
        Detective
        New York City Police Department

Sworn to me through the transmission of
this Complaint by reliable electronic
means (telephone), this _28th_ day of May, 2024.

_____
THE HONORABLE ONA T. WANG
United States Magistrate Judge
Southern District of New York

5